Raymond E. **TODD**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17788.

Court of Criminal Appeals of Oklahoma.

March 21, 1973.

Rehearing Denied April 11, 1973.

Fitzgerald, Houston & Worthington, Stillwater, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Kenneth L. Delashaw, Jr., Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, Raymond E. Todd, hereinafter referred to as defendant, was charged,

tried and convicted in the District Court of Payne County, Case No. CRF–71–199, for the offense of Murder. His punishment was fixed at life imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

Inasmuch as this cause must be reversed, we do not deem it necessary to recite a detailed statement of facts. The evidence on behalf of the State adduced that the defendant and the deceased were husband and wife. During their marriage of less than two years, they were separated on several occasions. On July 27, 1971 the deceased advised the defendant that she had sued him for divorce. On September 10, the deceased agreed to discuss reconciliation with the defendant and he took her to dinner. She consented to discuss their problem further the following night. During the next day, the defendant "drank some" and again met the deceased in the city park at Cushing at approximately 6:00 p. m., and they drove to the Thirty-three Club south of Stillwater. They drank a beer and drove to a cafe and had another beer and dinner. Shortly after dark, they left the cafe to return to Cushing. They stopped on Highway 33 between Stillwater and Cushing and the defendant shot the deceased eight times with a .22-caliber rifle as she sat on the right hand front seat of the automobile. Defendant then shot himself once or twice in the left breast. Defendant placed the deceased in the back seat of his automobile and drove to a home occupied by his son, arriving at approximately 11:30 p. m. The defendant went into the house and told his daughter-in-law that "he was alright but Lucille wasn't." The body of Lucille Todd was found lying in the garage partially covered with some type of throw rug. The defendant was arrested at approximately 8:45 the next morning near Drumright with three self-inflicted bullet wounds in his chest.

The evidence on behalf of the defendant adduced that he was a 58-year-old longtime resident of the Cushing-Drumright area of Oklahoma. The defendant's first wife, Ada, committed suicide in 1969. Shortly after the suicide of Ada, the defendant required psychiatric treatment and was under the care of Dr. Moorman Prosser. He was hospitalized in the psychiatric ward of St. Anthony's Hospital in Oklahoma City for a two-week period and received electric shock treatments. The defendant married Lucille Todd on December 31, 1969 and they separated several times until Lucille filed for a divorce on July 27, 1971. On August 22, the defendant attempted to commit suicide by cutting his wrists and was hospitalized in the psychiatric ward of Hillcrest Hospital in Tulsa until September 8, 1971. The defendant's memory of the events that occurred on the evening of September 11 was hazy. He testified that they left the cafe in Stillwater, proceeding to Cushing, but remembered nothing else until he saw fire coming from the end of the gun that he was holding which was pointing at the deceased. He then remembers taking her from the car, placing her on the ground, shooting himself, lying down with her, and then placing her in the back seat of the car. He remembers nothing thereafter until he drove into the yard of his son's home in Cushing.

Dr. Prosser testified that the defendant "has always been a person who was prone to error and has developed poor judgment and act upon these judgments aggravated by alcohol even his was more distorted. It is therefore my opinion that he really was only vaguely aware or conscious of the difference between right and wrong on this occasion but in my opinion could not really sort them out and direct his efforts or contain his efforts in his activity based on what he basically knew was right or wrong. [sic]" (Tr. 297)

The record reflects that the jury started their deliberations at approximately 1:00 p. m. on March 16 and arrived at a verdict at approximately 1:15 a. m. on March 17. At some point in the deliberation, the jury requested the trial court to further define the

term "reasonable doubt". The trial court thereupon instructed the jury as follows:

"You are instructed that our higher courts have stated that the trial court should not undertake to define the term 'reasonable doubt', and frowns upon us doing so, but in that the jury has requested this court to do so you are told as follows:

"A 'reasonable doubt' means a doubt founded upon reason. It does not mean a fanciful doubt, or a whimsical or capricious doubt, for anything related to human affairs and depending upon human testimony is open to some possible or imaginary doubt. When all the evidence in the case, carefully analyzed, compared and weighed by you, produces in your minds a settled conviction or belief of the defendant's guilt, such a conviction as you would be willing to act upon in matters of the highest importance relating to your own affairs, when it leaves your minds in the condition that you feel an abiding conviction amounting to a moral certainty of the truth of the charge, then, and in that event you would be free from a reasonable doubt. Absolute or mathematical certainty is not required, but there must be such certainty as satisfied your reason and judgment, and such that you feel conscientiously bound to act upon it. Otherwise you would have a reasonable doubt." (Tr. 450–451)

The defendant excepted to the trial court's giving of the instruction. In Lee v. State, Okl.Cr., 430 P.2d 858, wherein the trial court gave a similar instruction, we stated:

"Since territorial days this Court has repeatedly criticized the practice of the trial courts attempting to define reasonable doubt and when properly objected to, have in many instances, treated the instruction as reversible error."

Considering the length of time the jury deliberated, we can arrive at no other conclusion except that the trial court's instruction attempting to define "reasonable doubt" was prejudicial to the defendant. The judgment and sentence is, accordingly, reversed and remanded.

BLISS, P. J., and BRETT, J., concur.